**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW HAMPSHIRE**


Amanda Beth Anderson

   v.

Carolyn W. Colvin, Acting
Commissioner, Social Security
Administration

Civil No. 14-cv-15-LM
Opinion No. 2014 DNH 232


**O R D E R**


Pursuant to 42 U.S.C. § 405(g), Amanda Beth Anderson moves

to reverse the Acting Commissioner's decision to deny her

application for supplemental security income ("SSI") under Title

XVI of the Social Security Act, 42 U.S.C. § 1382.  The Acting

Commissioner, in turn, moves for an order affirming her

decision.  For the reasons that follow, the decision of the

Acting Commissioner, as announced by the Administrative Law

Judge ("ALJ"), is affirmed.


**Standard of Review**

The applicable standard of review in this case provides, in

pertinent part:

> The [district] court shall have power to enter, upon
> the pleadings and transcript of the record, a judgment
> affirming, modifying, or reversing the decision of the
> Commissioner of Social Security, with or without
> remanding the cause for a rehearing.  The findings of
> the Commissioner of Social Security as to any fact, if
> supported by substantial evidence, shall be conclusive
> . . . .


1

42 U.S.C. § 405(g) (setting out the standard of review for decisions on claims for disability insurance benefits); see also 42 U.S.C. § 1383(c)(3) (establishing § 405(g) as the standard of review for SSI decisions).  However, the court "must uphold a denial of social security . . . benefits unless 'the [Commissioner] has committed a legal or factual error in evaluating a particular claim.'"  Manso-Pizarro v. Sec'y of HHS, 76 F.3d 15, 16 (1st Cir. 1996) (quoting Sullivan v. Hudson, 490 U.S. 877, 885 (1989)).

As for the statutory requirement that the Commissioner's findings of fact be supported by substantial evidence, "[t]he substantial evidence test applies not only to findings of basic evidentiary facts, but also to inferences and conclusions drawn from such facts."  Alexandrou v. Sullivan, 764 F. Supp. 916, 917-18 (S.D.N.Y. 1991) (citing Levine v. Gardner, 360 F.2d 727, 730 (2d Cir. 1966)).  In turn, "[s]ubstantial evidence is 'more than [a] mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  Currier v. Sec'y of HEW, 612 F.2d 594, 597 (1st Cir. 1980) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)).  But, "[i]t is the responsibility of the [Commissioner] to determine issues of credibility and to draw inferences from the record evidence.  Indeed, the resolution of conflicts in the evidence is for the [Commissioner], not the courts."  Irlanda

Ortiz v. Sec'y of HHS, 955 F.2d 765, 769 (1st Cir. 1991)

(citations omitted).  Moreover, the court "must uphold the

[Commissioner's] conclusion, even if the record arguably could

justify a different conclusion, so long as it is supported by

substantial evidence."  Tsarelka v. Sec'y of HHS, 842 F.2d 529,

535 (1st Cir. 1988).  Finally, when determining whether a

decision of the Commissioner is supported by substantial

evidence, the court must "review[] the evidence in the record as

a whole."  Irlanda Ortiz, 955 F.2d at 769 (quoting Rodriguez v.

Sec'y of HHS, 647 F.2d 218, 222 (1st Cir. 1981)).

## Background

The parties have submitted a Joint Statement of Material

Facts, document no. 12.  That statement is part of the court's

record and will be summarized here, rather than repeated in

full.

Anderson first applied for SSI in June of 2011.  She

alleged disability due to bipolar disorder, depression, anxiety,

calcifications of the brain, scoliosis,[1] and fibromyalgia.[2]

Administrative Transcript (hereinafter "Tr.") 122.

---

[1]  Scoliosis is an "[a]bnormal lateral and rotational
curvature of the vertebral column."  Stedman's Medical
Dictionary ("Stedman's") 1734 (28th ed. 2006).

[2]  Fibromyalgia is "[a] common syndrome of chronic
widespread soft-tissue pain accompanied by weakness, fatigue,
and sleep disturbances; the cause is unknown."  Stedman's, supra
note 1, at 725.

In August of 2011, Anderson completed a function report in connection with her SSI application.  In that report, she reported difficulty interacting with other people and extreme pain in her back, hips, shoulders, and hands.  She also reported daily migraine headaches.  Despite those symptoms, Anderson stated that she: (1) was able to care for her children with the help of a roommate; (2) was able maintain her personal care, except that she had trouble bending and balancing; and (3) could drive, shop for groceries, and handle money.

In September 2011, two state-agency consulting doctors rendered opinions on Anderson's residual functional capacity[3] ("RFC").  Dr. James Trice, a physician, reviewed Anderson's medical records and rendered an opinion on her physical RFC. Dr. William Jamieson, a clinical psychologist, reviewed Anderson's medical records and rendered an opinion on her mental RFC.

In that same month, Anderson also saw Dr. Edouard Carignan, a clinical psychologist, for a consultative evaluation. Anderson told Dr. Carignan that she had no difficulty with household activities and that she did not need assistance when shopping or managing money.  Dr. Carignan diagnosed Anderson

---

[3] Residual functional capacity is "the most a [claimant] can do despite [her] limitations."  20 C.F.R. § 404.1545.

with anxiety and OCD.[4]   He noted diagnoses of scoliosis, asthma,

and migraines "by history."  With respect to Anderson's

functional capacity, he wrote that Anderson "would have

extensive difficulty interacting with a supervisor who would

insist that the work be completed in a manner other than the

manner in which she found acceptable."  Tr. 350.  He also noted

that Anderson would have no psychological difficulty in

performing activities of daily living, understanding or

remembering instructions, or in concentrating or completing

tasks.

   In January of 2011, Anderson saw her primary healthcare

provider, Sonya Gilbert, a physician's assistant.  Gilbert

evaluated Anderson and completed a function report.  In that

report, Gilbert noted diagnoses of depression, anxiety,

fibromyalgia, joint pain, and asthma.  Gilbert opined that due

to Anderson's physical limitations, she could perform sedentary

activities, but nothing more.  With respect to Anderson's mental

impairments, Gilbert found her to be markedly limited in her

---

   [4] Obsessive-Compulsive Disorder ("OCD") is "a type of
anxiety [disorder] the essential features of which include
recurrent obsessions, persistent intrusive ideas, thoughts,
impulses or images, or compulsions (repetitive, purposeful, and
intentional behaviors performed to decrease anxiety in response
to an obsession) sufficiently severe to cause marked distress,
be time-consuming, or significantly interfere with the person's
normal routine, occupational functioning, or usual social
activities or relationships with others."  Stedman's, supra note
1, at 570.

ability to interact with others and to maintain attention for extended periods of time, and found her to be mildly to moderately limited in several other areas of mental functioning.

In October 2012, Gilbert completed a Medical Source Statement of Ability to do Work-Related Activities.  Tr. 757-65. Gilbert stated that Anderson could frequently carry and lift up to ten pounds, and occasionally carry and lift eleven to twenty pounds.  Gilbert also stated that Anderson could perform activities such as: (1) shopping; (2) climbing a few steps at a reasonable pace with the use of a single handrail; (3) preparing a simple meal and feeding herself; and (4) caring for her personal hygiene.  However, Gilbert also noted that Anderson "has severe anxiety and is unable to shop alone [or] leave the house alone."  Tr. 766.

In addition to the above mentioned function reports, Anderson's record contains numerous medical records dating from January 2011.  Those records include treatment notes from the Alpine Clinic, Paincare Centers, Littleton Regional Hospital, Weeks Medical Center, and Dartmouth Hitchcock Medical Center.

Anderson's application for SSI benefits was denied in September 2011, and she requested a hearing before an ALJ.  In October 2012, ALJ Matthew Levin conducted a hearing at which he heard testimony from Anderson and a vocational expert ("VE"). At that hearing Anderson testified about her activities of daily

living and her limitations.  After the hearing, the ALJ issued a

decision that includes the following relevant findings of fact

and conclusions of law:

> 2.  The claimant has the following severe impairments:
> depression, anxiety with OCD, and fibromyalgia (20 CFR
> 416.920(c)).
>
> . . . .
>
> 3.  The claimant does not have an impairment or
> combination of impairments that meets or medically
> equals the severity of one of the listed impairments
> in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR
> 416.920(d), 416.925 and 416.926).
>
> . . . .
>
> 4.  After careful consideration of the entire record,
> the undersigned finds that the claimant has the
> residual functional capacity to perform light work as
> defined in 20 CFR 416.967(b) except she can
> occasionally perform fine manipulation bilaterally.
> She is able to maintain attention and concentration
> for two-hour increments throughout a workday, but
> would have to do so in a low stress environment
> (defined as requiring limited to no change in the work
> setting and little to no judgment), the claimant can
> sustain limited social contact with the general public
> and coworkers, and occasional social contact with
> supervisors.
>
> . . . .
>
> 9.  Considering the claimant's age, education, work
> experience, and residual functional capacity, there
> are jobs that exist in significant numbers in the
> national economy that the claimant can perform (20
> C.F.R. 416.969 and 416.969(a)).

Tr. 73-74, 76, 80.  Based on the testimony of the VE, the ALJ

found that Anderson could work as a "housekeeping cleaner," a

preparer, or a surveillance system monitor.  The ALJ concluded

that Anderson had not been disabled from the date of her

application through the date of the decision.

## Discussion

Anderson's arguments boil down to three claims of error in

the ALJ's decision. Anderson argues for reversal because the

ALJ: (1) mishandled her fibromyalgia by failing to follow SSR

12-2p,[5] 2012 WL 3104869 (July 25, 2012); (2) failed to consider

her scoliosis a severe impairment at step two of the sequential

analysis; and (3) made a faulty RFC determination both by

failing to properly consider the medical opinion evidence and by

determining that her statements about her symptoms were not

credible.

### A. The Legal Framework

To be eligible for SSI, a person must be aged, blind, or

disabled, and must meet certain requirements pertaining to

income and assets. 42 U.S.C. § 1382(a). The only question in

this case is whether Anderson was disabled.

For the purpose of determining eligibility for SSI,

> [a]n individual shall be considered to be disabled for
> purposes of this subchapter if [she] is unable to
> engage in any substantial gainful activity by reason
> of any medically determinable physical or mental
> impairment which can be expected to result in death or

---

[5] "SSR" stands for "Social Security Ruling," and SSR 12-2p
is titled "Evaluation of Fibromyalgia."

which has lasted or can be expected to last for a
continuous period of not less than 12 months . . . .

42 U.S.C. § 1382c(a)(3)(A).   Moreover,

> [f]or purposes of subparagraph (A), an individual
> shall be determined to be under a disability only if
> [her] physical or mental impairment or impairments are
> of such severity that [she] is not only unable to do
> [her] previous work but cannot, considering [her] age,
> education, and work experience, engage in any other
> kind of substantial gainful work which exists in the
> national economy, regardless of whether such work
> exists in the immediate area in which [she] lives, or
> whether a specific job vacancy exists for [her], or
> whether he [she] would be hired if [she] applied for
> work . . . .

42 U.S.C. § 1382c(a)(3)(B).

To decide whether a claimant is disabled for the purpose of
determining eligibility for SSI benefits, an ALJ is required to
employ a five-step process.   See 20 C.F.R. § 41.920.

> The steps are: 1) if the [claimant] is engaged in
> substantial gainful work activity, the application is
> denied; 2) if the [claimant] does not have, or has not
> had within the relevant time period, a severe
> impairment or combination of impairments, the
> application is denied; 3) if the impairment meets the
> conditions for one of the "listed" impairments in the
> Social Security regulations, then the application is
> granted; 4) if the [claimant's] "residual functional
> capacity" is such that he or she can still perform
> past relevant work, then the application is denied; 5)
> if the [claimant], given his or her residual
> functional capacity, education, work experience, and
> age, is unable to do any other work, the application
> is granted.

Seavey v. Barnhart, 276 F.3d 1, 5 (1st Cir. 2001) (citing 20
C.F.R. § 416.920).

The claimant bears the burden of proving that she is disabled.  See Bowen v. Yuckert, 482 U.S. 137, 146 (1987).  She must do so by a preponderance of the evidence.  See Mandziej v. Chater, 944 F. Supp. 121, 129 (D.N.H. 1996) (citing Paone v. Schweiker, 530 F. Supp. 808, 810-11)(D. Mass. 1982)).  Finally,

> [i]n assessing a disability claim, the [Commissioner] considers objective and subjective factors, including: (1) objective medical facts; (2) [claimant]'s subjective claims of pain and disability as supported by the testimony of the [claimant] or other witness; and (3) the [claimant]'s educational background, age, and work experience.

Mandziej, 944 F. Supp. at 129 (citing Avery v. Sec'y of HHS, 797 F.2d 19, 23 (1st Cir. 1986); Goodermote v. Sec'y of HHS, 690 F.2d 5, 6 (1st Cir. 1982)).

## B. Anderson's Arguments

As noted above, Anderson argues that the ALJ committed reversible error by: (1) failing to follow SSR 12-2p when evaluating her fibromyalgia; (2) failing to consider her scoliosis a severe impairment; and (3) rendering a faulty RFC assessment.  The court considers each argument in turn.

### 1.  Fibromyalgia

Anderson argues that the ALJ's decision "does not properly evaluate [her] severe impairment of fibromyalgia as set forth in SSR 12-2p."  Anderson fails to identify, however, how the ALJ's

analysis of her fibromyalgia strayed from the procedure outlined
in SSR 12-2p.  The Acting Commissioner argues, and this court
agrees, that despite the ALJ's failure to directly cite SSR 12-
2p, he complied with it.  As required by SSR 12-2p, when
evaluating Anderson's claim, the ALJ considered Anderson's
fibromyalgia at each step of the sequential evaluation process
and properly evaluated her credibility, see infra Part 2.b.
Thus, Anderson's argument fails.

### 2.  Scoliosis

With regard to step two of the sequential evaluation
process, Anderson argues that the ALJ's failure to consider her
scoliosis a severe impairment was not supported by substantial
evidence.  However, the court need not inquire into whether
Anderson's scoliosis is a severe impairment because "[t]his
court has consistently held . . . that an error in describing a
given impairment as non-severe is harmless so long as the ALJ
found at least one severe impairment and progressed to the next
step of the sequential evaluation process."  Chabot v. U.S. Soc.
Sec. Admin., 13-cv-126-PB, 2014 WL 2106498, at *9 (D.N.H. May
20, 2014).  Here, the ALJ found that Anderson "has the following
severe impairments: depression, anxiety with OCD, and
fibromyalgia," Tr. 73, and proceeded to the next steps of the
sequential evaluation process.  Accordingly, any error the ALJ

may have made regarding his assessment of Anderson's scoliosis is harmless.

### 3.   The ALJ's RFC Assessment

Anderson next claims that the ALJ made two errors when determining her RFC.  First, she challenges the weight the ALJ assigned to the opinion evidence.  Second, she takes issue with the ALJ's credibility assessment.

#### a.   Weighing the Opinion Evidence

According to Anderson, the ALJ made two errors when weighing the medical opinions.  First, she argues that the ALJ failed to give appropriate weight to Gilbert's opinion, and instead, relied primarily on the opinions of non-treating physicians.  Second, Anderson argues that the ALJ's analysis contains internal inconsistencies with respect to Dr. Carignan's opinion of her RFC.  The court addresses each argument in turn.

##### i.   Weight Given to Gilbert's Opinion

Anderson argues that the ALJ should have given Gilbert's opinion controlling weight because Gilbert is Anderson's primary-care provider and her opinion was rendered closer in time to the hearing than the opinions on which the ALJ ultimately relied.  This argument fails because, as a physician's assistant, Gilbert is not an "acceptable medical source."

Only "acceptable medical sources" can be considered

treating sources whose medical opinions are entitled to

controlling weight.  See SSR 06-03p, 2006 WL 2329939, at *2

(Aug. 9, 2006).

> In contrast, . . . physicians' assistants are defined
> as "other sources" whose opinions may be considered
> with respect to the severity of the claimant's
> impairment and ability to work, but need not be
> assigned controlling weight.  20 C.F.R. §
> 416.913(d)(1).  Therefore, while the ALJ is certainly
> free to consider the opinions of these "other sources"
> in making his overall assessment of a claimant's
> impairments and residual abilities, those opinions do
> not demand the same deference as those of a treating
> physician.

Genier v. Astrue, 298 F. App'x 105, 108 (2d Cir. 2008).  Thus,

while the ALJ may have considered Gilbert's opinion, it is not

entitled to controlling weight as an opinion of a treating

physician.

Further, for Anderson to mount any kind of argument based

on the weight the ALJ gave to the medical opinions, see 20

C.F.R. § 416.927(a)(2) (describing the way in which the

Commissioner is to evaluate opinion evidence), it was incumbent

on her to produce medical opinions from which the ALJ could have

crafted a more favorable RFC.  See Bowen, 482 U.S. at 146

(pointing out the claimant's burden to demonstrate disability).

13

This she did not do.[6]  Without producing any opinion evidence
contrary to the opinions of the state-agency consultants, or any
opinions closer in time to her hearing, there was no
counterweight to the opinions on which the ALJ relied.
Necessarily, the ALJ relied on the only medical opinions in the
record.

### ii.  Weight Given to Dr. Carignan's Opinion

Anderson next argues that the ALJ's decision is internally
inconsistent with respect to the weight the ALJ assigned Dr.
Carignan's opinion.  Dr. Carignan opined that Anderson would
have "extensive difficulty interacting with a supervisor who
would insist that work be completed in a manner other than the
manner in which she found acceptable."  Tr. 350.  Anderson
argues that the ALJ's decision is inconsistent because despite
giving Dr. Carignan's opinion "significant weight,"  Tr. 79, the
ALJ found that Anderson could "occasionally [have] contact with
supervisors."  Tr. at 79.  But, as the Acting Commissioner
points out, Anderson has failed to articulate how this amounts
to an inconsistency.  Thus, her argument fails.

---

[6] Anderson has produced some treatment records, but she has
produced no "statements from [treating] physicians [or]
psychologists or other acceptable medical sources that reflect
judgments about the nature and severity of [her] impairment(s),
including [her] symptoms, diagnosis and prognosis, what [she]
can still do despite impairment(s), and [her] physical or mental
restrictions."  20 C.F.R. § 416.927(a)(2).

b.   The ALJ's Credibility Assessment

Anderson's final argument is that the ALJ's credibility finding is not supported by substantial evidence.  Anderson contends that the ALJ erred by failing to give proper weight to her testimony about her pain symptoms.

According to Social Security Ruling ("SSR") 96-7p, "an individual's statement(s) about his or her symptoms is not in itself enough to establish the existence of a physical or mental impairment or that the individual is disabled."  1996 WL 374186, at *2.  "A symptom is an individual's own description of his or her physical or mental impairment(s)."  Id.

When "symptoms, such as pain, fatigue, shortness of breath, weakness, or nervousness," id., are alleged, SSR 96-7p prescribes

> a specific staged inquiry that consists of the
> following questions, in the following order:
> (1) does the claimant have an underlying impairment
> that could produce the symptoms he or she claims?; (2)
> if so, are the claimant's statements about his or her
> symptoms substantiated by objective medical evidence?;
> and (3) if not, are the claimant's statements about
> those symptoms credible?

Allard v. Colvin, No. 13-cv-82-JL, 2014 WL 677489, at *2 (D.N.H. Feb. 21, 2014) (citation omitted); Valiquette v. Astrue, 498 F. Supp. 2d 424, 434 (D. Mass. 2007) ("dissonance between the objective medical assessments and the plaintiff's description of the level of pain he was experiencing . . . merely poses the

15

question of the credibility of his subjective complaints, it does not answer it").

If an adjudicator reaches the third step in the inquiry, i.e., the credibility question, he or she must also consider additional evidence, such as:

> 1. The individual's daily activities;
>
> 2. The location, duration, frequency, and intensity of the individual's pain or other symptoms;
>
> 3. Factors that precipitate and aggravate the symptoms;
>
> 4. The type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms;
>
> 5. Treatment, other than medication, the individual receives or has received for relief of pain or other symptoms;
>
> 6. Any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and
>
> 7. Any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.

SSR 96-7p, 1996 WL 374186, at *3.  In this circuit, the seven considerations listed above are commonly referred to as the Avery factors.  However, "[a]s a matter of law, the ALJ is not required to address all of the Avery factors in his decision." Matos v. Astrue, 795 F. Supp. 2d 157, 164 (D. Mass. 2001) (citing N.L.R.B. v. Beverly Enters.-Mass., Inc., 174 F.3d 13, 26 (1st Cir. 1999)).

An ALJ's credibility determination must be supported by

substantial evidence, see Irlanda Oritz, 955 F.2d at 769, and

"is entitled to deference, especially when supported by specific

findings," Frustaglia v. Sec'y of HHS, 829 F.2d 192, 195 (1st

Cir. 1987) (citing Da Rosa v. Sec'y of HHS, 803 F.2d 24, 26

(1986)).   That said, an ALJ's "determination or decision must

contain specific reasons for the finding on credibility,

supported by the evidence in the case record, and must be

sufficiently specific to make clear to the individual and to any

subsequent reviewers the weight the adjudicator gave to the

individual's statements and the reasons for that weight."   SSR

96-7p, 1996 WL 374186, at *2 (emphasis added).   In other words,

"[i]t is not sufficient for the adjudicator to make a single,

conclusory statement that 'the individual's allegations have

been considered' or that 'the allegations are (or are not)

credible.'"   Id.   To perform a proper discussion and analysis,

the ALJ "must identify what testimony is not credible and what

evidence undermines the claimant's complaints." Balaguer v.

Astrue, 880 F. Supp. 2d 258, 268 (D. Mass. 2012) (quoting Bazile

v. Apfel, 113 F. Supp. 2d 181, 187 (D. Mass. 2000); citing

Lester v. Chater, 81 F.3d 821, 834 (9th Cir. 1995)).

Here, the court can find no fault with the manner in which

the ALJ evaluated Anderson's credibility.   The ALJ clearly

identified the statements to which he applied the credibility

17

analysis.  See Weaver v. Astrue, No. 10-cv-340-SM, 2011 WL
2580766, at *6 (D.N.H. May 25, 2011) ("As a starting point for
the following analysis, it is necessary to identify the
statement(s) at issue.").  Then, the ALJ answered the first
question of the staged inquiry by finding "that [Anderson's]
medically determinable impairments could reasonably be expected
to cause the alleged symptoms."  Tr. 77.

The ALJ then answered the second question of the staged
inquiry by finding that "[i]n terms of [Anderson's] alleged
disabling level of fibromyalgia pain and limitation, the medical
evidence fails to fully support the allegations."  Tr. 77.  To
bolster that finding, the ALJ pointed to several specific pieces
of objective medical evidence including reports about Anderson's
gait and her "full range of motion and strength in all her
extremities."  Tr. 77.

Anderson may be correct that the record contains
substantial evidence supporting her statements about pain.
However, the test for a reviewing court is not whether the
record arguably supports a claimant's version of events.
Rather, the court "must uphold the [Acting Commissioner's]
conclusion, even if the record arguably could justify a
different conclusion, so long as it is supported by substantial
evidence."  See Tsarelka, 842 F.2d at 535.  As things stand,
there is substantial evidence to support the ALJ's determination

that Anderson's allegations of pain were not substantiated by objective medical evidence, and that is dispositive.[7]  Finally, having determined that it was necessary to assess Anderson's credibility pursuant to question three of the staged inquiry, the ALJ did so with citations to evidence in the record.

Anderson responds by citing her medical record generally, faulting the ALJ for considering her daily activities, the first Avery factor, and asserting that her statements are credible. She does not, however: (1) identify any Avery factor the ALJ did not consider; or (2) demonstrate that the ALJ's credibility assessment was not supported by substantial evidence.  Those failures are fatal to Anderson's arguments.

### Conclusion

Because the ALJ has committed neither a legal nor factual error in evaluating Anderson's claim, see Manso-Pizarro, 76 F.3d at 16, Anderson's motion for an order reversing the Acting Commissioner's decision, document no. 7, is denied, and the

---

[7] In Johnson v. Astrue, 597 F.3d 409, 414 (1st Cir. 2009), the court found an ALJ's credibility assessment of a claimant with fibromyalgia was flawed because the ALJ discredited the claimant without pointing to any "instances in which any of the claimant's physicians ever discredited her complaints of such pain."  Here, however, the ALJ pointed to objective medical evidence that tended to discredit Anderson's statements.

Acting Commissioner's motion for an order affirming her

decision, document no. 10, is granted.   The clerk of the court

shall enter judgment in accordance with this order and close the

case.

        SO ORDERED.

                                    _____
                                    Landya McCafferty
                                    United States District Judge

November 4, 2014

cc:   Christine Woodman Casa, Esq.
      T. David Plourde, Esq.